IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIMOTHY F.,[1]

       Plaintiff,

vs().

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Civil No. 19-cv-296-DGW[2]

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for SSI in October 2015, alleging a disability onset date of October 27, 2015. After holding an evidentiary hearing, an ALJ denied the application on November 22, 2017. (Tr. 24-34). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 2). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## Issues Raised by Plaintiff

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 11, 13.

1

Plaintiff raises the following issues:

1. The ALJ failed to properly evaluate plaintiff's complaints of pain.

2. The ALJ did not properly evaluate the opinion of plaintiff's treating physician, Dr. Miner.

### **Applicable Legal Standards**

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience

the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He

determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of chronic obstructive pulmonary disease (COPD), asthma, pulmonary fibrosis, severe obstructive sleep apnea, obesity, inflammatory arthritis/rheumatoid arthritis, degenerative disc disease, and temporomandibular joint (TMJ) dysfunction.

The ALJ found that plaintiff had the RFC to do light work, which requires lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, except that he could never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs; only occasionally balance, stoop, kneel, crouch, and crawl; and should avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, hazards, machinery, and heights.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past relevant work. However, he was not disabled because he was able to do other jobs that exist in significant numbers in the national economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1964 and was 53 years old at the time of the ALJ's

decision. (Tr. 195). He said he was disabled because of COPD and osteolysis (bone loss) in the bottom left jaw. He was 5' 11" tall and weighed 260 pounds. He stopped working in December 2003 because his employer closed down. He said his condition became disabling in January 2011. He had worked in the past as a mechanic and a welder. (Tr. 198-200).

In January 2016, plaintiff said his ability to work was limited by jaw pain and trouble breathing. (Tr. 207).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the hearing in October 2017. (Tr. 69).

Plaintiff testified that he had done some work as a self-employed mechanic and odd jobs, but not since 2015. (Tr. 72).

Plaintiff testified that his rheumatologist, Dr. Miner, told him he had osteomyelitis in his jaw and rheumatoid arthritis in his hands and legs. He could stand for 10 to 15 minutes, walk for 10 to 15 minutes, and sit for 10 to 15 minutes. His legs and feet ache and cramp up. He has to change positions all the time. His hands get numb. He gets pustules on his hands and feet. He has no grip strength. (Tr. 73-75). He had shortness of breath. (Tr. 77). He has pain in his left jaw and can only open his mouth about one-half of an inch. He has pain in his ribs and knees. (Tr. 80).

A vocational expert (VE) also testified. The VE testified that a person with plaintiff's RFC assessment could not do plaintiff's past work, but he could do other jobs such as cashier II, furniture rental clerk, and ticket seller. (Tr. 83-84).

## 3. Relevant Medical Records

Plaintiff had pulmonary function testing on the day he applied for disability benefits. Spirometry showed no airflow limitation with no significant acute response to bronchodilator. The report stated that "MVV was reduced indicating sub-optimal effort." Diffusion capacity was moderately reduced. A six-minute walk test showed his oxygen level never went below 94%, indicating no exercise induced hypoxemia, but decreased exercise capacity. (Tr. 274). A chest x-ray showed bronchitis, possibly chronic. (Tr. 280).

Dr. Adrian Feinerman performed a consultative exam in January 2016. He found no anatomic abnormality of any extremity, joint warmth, redness, thickening, effusion, limitation of any joint, cyanosis, clubbing, spinal deformity, or spinal motion limitation. Plaintiff had no skin lesions. His lungs were clear with no wheezes, rales, or rhonchi. Plaintiff had strong and equal grip strength bilaterally, normal ambulation without assistive device, full range of motion, normal cranial nerves, normal muscle strength throughout, no spasm or atrophy, negative straight leg raise bilaterally, and normal fine and gross manipulation. (Tr. 302-311).

About 2 weeks later, Dr. Jamous at Archview Medical Center diagnosed acute bronchitis. On exam, plaintiff had wheezing, rhonchi, and rales. Ambulation was normal. He had normal motor strength and tone, with no tenderness on musculoskeletal exam. (Tr. 315-319).

The first documented visit with Dr. Miner was in February 2016. Plaintiff's "active problems" included chronic osteomyelitis of the mandible, interstitial lung

disease, and "other psoriatic arthropathy."[4]  There were no notes of findings on physical exam.   Dr. Miner prescribed a ProAir rescue inhaler and Vicodin for pain.  (Tr. 344-345).

In May 2016, plaintiff saw Dr. Miner for severe pain involving multiple joints, similar to what he had in the past when his psoriatic arthritis was active.   He also had mandible swelling.   Dr. Miner noted tenderness over multiple joints, including the wrists and elbows.   Plaintiff had previously lost all his teeth due to autoimmune osteomyelitis.   Dr. Miner noted that Enbrel had been effective in the past, but it was not authorized by plaintiff's insurance company.   The doctor gave plaintiff samples of Enbrel.   (Tr. 417-419).   Enbrel was approved by the insurance company the next month.   (Tr. 421).

Dr. Miner noted that plaintiff was doing well on Enbrel in October 2016.  (Tr. 484).

In February 2017, Dr. Miner wrote that plaintiff was "doing much better in terms of both his psoriasis and his psoriatic arthritis" now that he was on Enbrel again.   However, he was still having TMJ pain.   The doctor thought that was due to damage from prior inflammation rather than active inflammation.   He prescribed Vicodin for jaw pain and planned to refer him to an ENT specialist for evaluation.     (Tr. 482-483).   There is no indication that plaintiff was evaluated by an ENT specialist.

Plaintiff saw Dr. Jamous in July 2017.   The doctor noted normal muscle

---

[4] The term interstitial lung disease "describes a large group of disorders, most of which cause progressive scarring of lung tissue." https://www.mayoclinic.org/diseases-conditions/interstitial-lung-disease /symptoms-causes/syc-20353108, visited on January 2, 2020.

strength and tone, normal gait and station, no tenderness of the joints, bones, or muscles, and normal movement of all extremities. (Tr. 492-496).

Dr. Jamous saw plaintiff in September 2017. Plaintiff was having trouble with his CPAP machine. He reported shortness of breath, coughing, and wheezing, but denied muscle aches, muscle weakness, joint pain, or back pain. Musculoskeletal exam was normal. His neck was supple with a full range of motion. Strength was normal. Respiratory effort was unlabored, but he had rhonchi and rales on auscultation. Dr. Jamous assessed allergic rhinitis, sleep apnea, rheumatoid arthritis that was probably adding to his pulmonary disease, immunosuppression secondary to Humira, chronic cough, and moderate persistent asthma, uncomplicated. (Tr. 810-814).

About 10 days after the visit with Dr. Jamous, Dr. Miner completed a form entitled Physical Residual Functional Capacity Questionnaire. There is no record of Dr. Miner having seen plaintiff since February 2017. Dr. Miner listed plaintiff's diagnoses as psoriatic arthritis and osteomyelitis. He wrote that plaintiff had permanent jaw damage from autoimmune osteomyelitis and chronic pain due to psoriatic arthritis. The form asked him to estimate the patient's functional limitations in a number of areas. Dr. Miner wrote "These are estimates." He indicated that plaintiff could sit or stand for only 15 minutes at a time and could sit and stand/walk for a total of less than 2 hours a day. He needed the ability to change positions at will and needed to take 2 unscheduled breaks per hour. He could rarely look down or up, turn his head, or hold his head in a static position. He was limited to doing fine and gross manipulations and reaching for only 10% of

the day. (Tr. 817-820).

## **Analysis**

Plaintiff first argues that the ALJ ignored his complaints of pain, made both to his healthcare providers and voiced at the hearing.

SSR 16-3p supersedes the previous SSR on assessing the reliability of a claimant's subjective statements. SSR 16-3p became effective on March 28, 2016 and is applicable here. 2017 WL 5180304, at *1.

SR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529. *Ibid.*, at *10.

The new SSR does not purport to change the standard for evaluating the claimant's allegations regarding his symptoms. Thus, prior Seventh Circuit precedents continue to apply.[5]

The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's

---

[5] Plaintiff cites Eighth Circuit opinions as well as district court decisions. Such citations are of little use. This district lies within the Seventh Circuit, and district court decisions are not precedential authority. *Van Straaten v. Shell Oil*, 678 F.3d 486, 490 (7th Cir. 2012).

testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

Contrary to plaintiff's argument, the ALJ did not simply ignore his complaints of pain. The ALJ explicitly acknowledged his complaints and acknowledged that he presented with tenderness over multiple joints and active psoriasis, citing Exhibit 9F at page 28. See, Tr. 29. The ALJ's citation refers to the May 2016 visit with Dr. Miner, described above. That visit took place before plaintiff began taking Enbrel. The ALJ pointed out that Dr. Miner stated in February 2017 that plaintiff was doing much better on Enbrel. (Tr. 29). Plaintiff's argument completely ignores the fact that, according to Dr. Miner, treatment with Enbrel was effective. The ALJ was, of course, permitted to consider the effectiveness of treatment in evaluating plaintiff's subjective allegations. 20 C.F.R. § 404.1529(c)(3)(iv); *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018).

Plaintiff criticizes the ALJ for relying on plaintiff's conservative treatment and the normal findings on medical exams. He "disagrees" that the use of Enbrel, Methotrexate, Hydrocodone and Humira is conservative treatment. See, Doc. 23, pp. 4-5. He provides no authority for his incorrect understanding. More importantly, he offers no substantive criticism of the ALJ's reliance on the many normal findings made by his treating doctors on physical exams. The ALJ was obviously entitled to consider those normal findings, which contradicted his complaints of disabling pain. 20 C.F.R. § 404.1529(c)(1).

Lastly, plaintiff's premise that the ALJ completely discounted his complaints

of pain in assessing his RFC is faulty as the ALJ restricted him to light work only.

The ALJ's conclusion as to the accuracy of plaintiff's statements was supported by the evidence and was not "patently wrong;" it must therefore be upheld. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Plaintiff's second argument regarding the weighing of Dr. Miner's opinion fares no better.

Dr. Miner treated plaintiff, but the ALJ was not required to fully credit his opinion because of that status; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). A treating source's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Plaintiff's application was filed before March 27, 2017. The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides, in part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

If the ALJ decides not to give the opinion controlling weight, he is to weigh it

applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques [,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

Here, the ALJ explained that he gave little weight to Dr. Miner's opinion because it was inconsistent with the diagnostic findings, imaging reports, and the many normal findings on exams. (Tr. 32).

Plaintiff acknowledges that his condition improved with Enbrel but argues that he still had TMJ pain and that TMJ pain is not inconsistent with Dr. Miner's opinion. See, Doc. 23, p. 5. However, he offers no explanation for why jaw pain would severely restrict his ability to sit, stand, walk, lift, use his hands, and reach. He also points out that Dr. Miner wrote that he planned to refer him for evaluation by an ENT specialist. There is, however, no indication in the record that Dr. Miner made such a referral or that plaintiff acted upon it.

In short, plaintiff's argument about Dr. Miner's opinion is nothing more than a plea to this Court to reweigh the evidence and come to a different conclusion, which is not the Court's role. *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1153 (7th Cir. 2019).

Considering the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a

standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ easily met the minimal articulation standard here.

Plaintiff's has not identified a sufficient reason to overturn the ALJ's decision. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: January 9, 2020.**

**DONALD G. WILKERSON**
**U.S. MAGISTRATE JUDGE**